So why don't we start off with 21-3012 Myers v. Doherty. And we have, let's see, for the appellant, Mr. Solotaroff? No, I want to get it right. It's Solotaroff. Solotaroff, I'm sorry about that. And I understand you would like to reserve two minutes for rebuttal, is that right? Yes, Judge. Okay, so if you don't mind just tilting the microphones up a little bit to make sure that we can hear you, please proceed. May it please the court, my name is Jason Solotaroff and I represent Appellant Sergeant Ronald Myers in this appeal. The district court erred here in three principle ways. The first was ignoring the authority of this court in the Schultz case when the Second Circuit held that a adverse employment action is effective and is actionable when it is conveyed to the employee. The district court said that Sergeant Myers' transfer from a prestigious position in the Counterterrorism Bureau to a precinct assignment was not an adverse employment action because it didn't happen yet. But under the authority of Schultz, which itself was decided based on the authority of the Supreme Court in Ricks, that was adverse employment action when Sergeant Myers was told about it, the statute of limitations started then, and it constitutes an adverse employment action. Can I ask you, in your view, obviously we know that Schultz is a notification of termination, right? There's the argument on the other side, well, maybe it should be limited to termination. Is it your view that every adverse employment action is actionable upon notification of it? I think that's what the law says. All, every kind, not just termination, and I understand you think you fall within the category of what's actionable. Well, some might not be actionable at all, right? And that's what I think Schultz said. Schultz said that, because Schultz dealt with a different, slightly different situation where the adverse employment decision had been rescinded. And Schultz says, well, there's certain sort of more minor adverse employment actions that, if they're rescinded, aren't operative at all. But I think if you look at the cases we cited in our brief, and I think there was a Supreme Court case after Ricks, which basically said that they're operative when they're announced, and of course that's- That something could be actionable. Let's say you get notification of employment action X. We won't even specify what it is, on January 1st. And it's supposed to take place on June 1st. That's when it's effective. You get lots of notice. Presumably you, under your view, you could then file your EEO complaint on January 2nd, right? And say, hey, this action took place. So how does it work if rescission can make it go away? That is sort of actionable, but then retroactively not actionable. How does it work? Well, depending on what adverse employment action it is, it would be actionable even if it was rescinded. So let's say you were terminated, or let's say, in this case, let's say that Sergeant Myers was told that he was going to be transferred to this precinct command, which was humiliating, and which would not only make him miserable to the point that any reasonable person would quit, but it would also negate all of his accomplishments up to that point, right? Because anyone who looked at his career would say, what happened to this guy? It's as if, obviously, all of you have lifetime appointments, so you're not subject to this. But it's as if a court of appeals judge was transferred to be a magistrate judge, and people would say, well, not that magistrate judges aren't important, of course. We would never say that. Yeah, let's not go there. Let's take a different hypothetical. Okay. Well, in any event, it's the kind of thing that would certainly raise, it really negated all of his accomplishments. I guess my question, though, is what if you had a situation where you announced on January 1st, let's take this case. You're going to be transferred to another unit on June 1st. And let's assume that your client did not take vacation time. He just was very upset and thinking this thing was going to happen. And then three months into it, say in March, defendant Doherty is transferred to some other unit. A new supervisor comes in, looks at the personnel in the department, and says, no, no, no. I think Myers should stick around here, and rescinds it. I think it would be actionable. Actionable or not? Actionable, Judge, but only to a certain extent, right? There couldn't be a constructive discharge then, which is our really main claim. But I think it would be actionable for whatever it's worth. So is the idea actionable, which is very, almost no damage is sort of a thing? Emotional, I think in that situation, Sergeant Myers would have been able to come in and say, I spent those three months terrified that my career was going down the drain. I saw a psychotherapist, and I have emotional distress damages. And the other way, Your Honor, is that I think the district court really erred is just holding the complaint here to a much higher standard than is envisioned in Iqbal or in Chwambli. And I get it. Those decisions were trying to change a situation where you could just basically say, I was discriminated against, I was treated less well than someone of another race, and I immediately got into court and got to take discovery, or I allege antitrust, there was a combination of restraint of trade, and I get huge amounts of discovery. But those cases don't envision this situation. Where I think the combination of defendants and the district court really picked apart the complaint in a way that just, minced words in a way that really took away a lot of its meaning. So for example, when we say that Doherty told Sergeant Myers that he could no longer use the bathroom that she and the other supervisors used, the district court in terms of, well, he didn't say that the other supervisors continued to use it. Or maybe it was just that he wasn't allowed to use it because he was a man, or this or that. But we get, I'm just to get all the inferences. And the complaint says, she said he could no longer use it because she used it. So I mean, that's something that was in the complaint. That's not something the court made up, right? No, but- And there's no allegation in there that the people who were allowed to continue to use it were similarly situated. Well, again, I think you can infer that from the allegation that he alone, it does say in the complaint, in the introductory section, he alone was prevented from using it. And so, again- But I don't think even you're suggesting that it was open to everyone. To the supervisors in the unit, male, female. That's where I don't think the pleading is clear for us. I mean, he alone was prohibited from using it. What do we have that suggests that other male supervisors were permitted to use it? Other white male supervisors were permitted to use it? I mean, anything that fits the standard or that supports the complaint you're making of racial discrimination. Well, I alleged in paragraph 37, Defendant Doherty called Sergeant Myers and told him that he could no longer use the bathroom that Defendant Doherty and the other white supervisors used. And it didn't say the other, it says other. And the other white supervisors used. So I mean, again, I mean, you know. This is what I mean. The problem is that there's nothing here that says all the other supervisors were allowed to use it. And it doesn't specify the gender, it also doesn't specify the rank. We don't know, was Sergeant Myers the only one who wasn't of a higher rank? I mean, which supervisors? Well, isn't this a situation where we should try to find out what Doherty's explanation for all this is? I mean, in other words, we've alleged enough here that this is not a conclusory complaint. There's a whole story here. And I think if someone you had dinner with, or more relevantly, a reasonable jury, if they heard this whole story, it's hard to imagine that they wouldn't think that, well, you know, it seems like something bad happened here. It seems like Doherty had it out for this guy. And it seems like it very well might have been because he had told her not to use racist comments. And because he was black. So you've reserved two minutes for rebuttal. Yep, I'm going to sit down. Why don't we hear from counsel for the appellee, Mr. Wasowski? That's it, Your Honor. Okay. Good morning, Your Honors, and may it please the court, Kevin Wasowski on behalf of Appellees. The district court properly considered Myers' amended complaint and found that it failed to plausibly allege any of the multiple claims it purported to assert. This court should reject Myers' attempts to paper over his amended complaint's shortcomings and should affirm the district court's dismissal. With respect to his complaint's failure to timely allege an adverse employment action, Mr. Myers argues that the mere decision to, a mere decision about a potential adverse employment action is enough. But the Schultz case doesn't go nearly that far. The Schultz case was talking about the notice rule from Ricks and was specifically acknowledged that termination was something different. In Schultz, the court said that notice of termination is unlike other types of actions that an employer might take toward its employee in that it announces the complete termination of the employment relationship. And also in Schultz and in Ricks and in the other cases that Myers cites, there was, and in Your Honor's example this morning, there was a date certain when the employment action was set to take place. And the amended complaint here does not allege a date certain when Myers was to be transferred. This is significantly different from the cases that Myers cites on appeal, including the district court case's levy, where the employee was told that he would be transferred next Monday. Or Myers, different Myers, where the employee was told that they would be transferred on a specific date in September, barring a medical intervention. What do you do with the argument that in Schultz, we distinguish termination because of how serious it is we said that. But in the sense that we were distinguishing a rescinded termination from other forms of rescinded adverse employment actions. This, of course, was never rescinded, right? Correct, in fact, it never occurred. Right, never occurred. But that's different, it was never rescinded. So how do you respond to that in terms of, look, Schultz gives some language that may guide us or may not, but it certainly doesn't govern what's going on here. I mean, we have an open question. But I think that, as counsel acknowledged, the allegations in the complaint are more appropriately characterized as a constructive discharge claim. And that trying to figure out whether something was an adverse action when that action never occurred. And there was no specific date when it was supposed to occur, really makes the analysis of whether that action was adverse or not very, very complicated. And- Are you saying that always, when you have an adverse employment action notified, okay, it doesn't get carried out, and then the person quits before it takes effect. We should always be analyzing it under a constructive discharge rubric? No, Your Honor, I think it matters, the specifics of that, of the allegations matter immensely here. And where an alleged adverse employment action is supposed to take place on a specific date, then the standard from Schultz and Ricks may apply, and the court may engage in that kind of analysis. But we're nowhere near that situation here. There was, as he acknowledged, there was no material change that occurred to his employment status, his salary remained the same, his title remained the same, and the harms that he discusses in Myers' amended complaint are speculative. And the court doesn't need to get into that analysis, both because the specific facts here are different, and because Mr. Myers fails to allege an inference of discrimination, which is a requirement for him to make out his claim as well. With respect to his allegations of an inference of discrimination and why they fail, his entire claim is premised on this idea of a continuous campaign by Captain Doherty where she enacted a vengeance upon him whenever she had a chance, but that collapses upon examination of the timeline at issue in this case. So Myers alleges that Doherty was powerful enough when they were both sergeants in their original unit together to have him transferred out of that unit, and that she then maintained this race-based vendetta against him for 14 years. He alleges that she had authority to discipline him from 2012 onward, but only used that authority twice, in July 2012 for the incident where he had a vehicle towed, and in June 2017 where he made an unauthorized change to his schedule. He alleges that she was able to negatively influence his annual review, but again, his complaint only alleges specific changes in 2016. He says it was less favorable in 2017, and the complaint's silent as to whether Captain Doherty affected his annual review in 2018 or other years. And then with respect to the bathroom, she was in charge of his unit from 2014 onward, but prohibited him from using her bathroom beginning in September 2018. So there's the allegation that this was someone who had a vendetta against Mr. Myers, or Sergeant Myers, and was intent on harming him at every opportunity just sort of collapses as you start to dig into the specific facts of the case. Unless there are any other questions from the panel. No, thank you very much. Thank you. So why don't we hear from the appellant? You have reserved two minutes for rebuttal. Yes, I just wanted to address the deep certain argument. And again, I think if you look at the detailed allegations of the complaint, you can see that there's a reason why there was not a date certain initially, because when Sergeant Myers was told he was being transferred, he basically exploded and said this is discriminatory. You've gotten rid of now all of the black supervisors in the unit. You didn't transfer all these white officers who did much more serious things. And as a result, for whatever reason, one of the other defendants, Lieutenant Connery, decided he was obligated to make a complaint to the police department's equal opportunity office. And then there was an investigation. And during that time, we can infer that the transfer was on hold. And then as soon as that investigation is closed, Sergeant Myers speaks to Doherty, realizes he doesn't really have any option, and says, look, I'll leave it on my own. Let me just use my vacation time. And she allows him to do that. And to say that she didn't do every single discriminatory act that she possibly could, meaning, well, she didn't stop amusing about them earlier. She didn't do more horrible things to him, doesn't take away from the fact that she did a lot of horrible things to him, your honors. So if no one has any other questions, I'll yield the rest of my time. Thank you. Thank you very much to both of you. We will take the case under advisement.